UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| E.M., by her mother and next friend, ) | |
| KAY THOMPSON, ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 05-10611-GAO |
| TOWN SPORTS INTERNATIONAL, ) | |
| INC. and TSI WELLESLEY, INC., ) | |
|    Defendants. ) | |

## COMPLAINT AND JURY DEMAND

I. **INTRODUCTION**

1. In this action, plaintiff E.M. seeks injunctive relief and damages under Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12181 et seq. and the Massachusetts Public Accommodations Law, M.G.L. c. 272 § 98. Plaintiff alleged that Defendants unlawfully disenrolled her from its summer camp program because of her disability, diabetes mellitus, and denied her parents' request for assistance from camp staff in performing tasks necessary for the management of her diabetes.

II. **PARTIES**

2. Plaintiff E.M. is a seven-year-old child who resides with her parents and older sister in Wellesley, Massachusetts. She is a person with a disability within the meaning of the Americans with Disabilities Act (the ADA) and the Massachusetts Public Accommodations Law in that she has diabetes mellitus, a disorder of the endocrine system that substantially limits one or more major life activities, including her ability to

eat and metabolize food.

3. Defendant Town Sports International, Inc. (TSI) has a usual place of business at 888 Seventh Avenue, New York, NY. It is a leading owner and operator of more than 130 health and fitness clubs and recreational programs in major cities from Washington D.C. north through New England as well as three clubs in Switzerland. As such, it is a public accommodation within the meaning of Title III of the Americans with Disabilities Act (the ADA) and the Massachusetts Public Accommodations Law. Therefore, TSI is subject to Title III and the Massachusetts Public Accommodations Law.

4. Upon information and belief, defendant TSI Wellesley, Inc. is a subsidiary of TSI. It has a usual place of business at 140 Great Plain Avenue, Wellesley, Massachusetts. TSI Wellesley owns and operates Wellesley Sports Club and Camp Wellesley, a summer day camp for children. As such, it is a public accommodation within the meaning of Title III of the ADA and the Massachusetts Public Accommodations Law. Therefore, TSI Wellesley is subject to Title III of the ADA and the Massachusetts Public Accommodations Law.

III. JURISDICTION AND VENUE

5. Jurisdiction of this Court is conferred pursuant to 28 U.S.C. § 1331 and § 1343(a)(4). The Court has jurisdiction of plaintiff's state law claim by virtue of its pendant jurisdiction.

6. The events giving rise to this action occurred within the District of Massachusetts. Thus venue is properly within this District pursuant to the provisions of 28 U.S.C. § 1391(b).

IV. FACTUAL ALLEGATIONS

7. E.M. has diabetes mellitus, a disorder of the endocrine system that results in insufficient production of insulin, an enzyme necessary to metabolize glucose. Insufficient insulin causes a buildup of blood sugar and, if not continuously monitored and adequately treated, can cause permanent damage to the kidneys, heart, eyes, and nervous system.

8. E.M.'s diabetes requires constant delivery of insulin by means of a pump attached to her body that automatically injects insulin into her bloodstream. The pump consists of a pump reservoir filled with insulin, a small battery-operated pump, and a computer chip that allows her to control exactly how much insulin the pump delivers. The pump reservoir delivers insulin to the body by a thin plastic tube with a needle or soft cannula at the end through which the insulin passes. The pump can be programmed to deliver higher doses of insulin when needed to counteract high blood sugar levels and carbohydrate consumption.

9. E.M.'s diabetes requires frequent monitoring. This monitoring involves pricking her finger to extract a drop of blood after meals and periodically throughout the day and testing the blood to measure the blood sugar level. A high blood sugar level is corrected by adjusting the amount of insulin delivered by her pump. A low level is corrected by providing a high-carbohydrate snack. Monitoring may also involve testing her urine for the presence of ketones to determine whether her body is failing to metabolize glucose and is breaking down fats to provide energy.

10. In order to control her diabetes, E.M. must eat at regularly scheduled times and cannot skip meals. In addition to three meals a day, she must eat snacks twice a day between meals and must keep her carbohydrate intake consistent as much as possible.

11. E.M.'s diabetes has been successfully managed by staff at her school, pre-school, afterschool placements and by staff at other recreational programs she has attended. E.M.'s mother, a physician, has trained teachers and other care providers in assisting with monitoring E.M.'s diabetes. E.M.'s parents provide all meals and snacks that she consumes when she is not at home together with information about the number of carbohydrates in each item of food to assist in adjusting the amount of insulin administered by the pump.

12. On or about February 9, 2004, E.M.'s parents enrolled E.M. and her older sister Hannah at Camp Wellesley (the Camp) on Mondays, Wednesdays, and Fridays during the summer.

13. In late May 2004, Dr. Thompson, E.M.'s mother, sent the Camp completed medical forms for each child. E.M.'s form included information about her diabetes.

14. Dr. Thompson contacted the Camp repeatedly in an attempt to set up a meeting to teach staff about managing E.M.'s diabetes. She was told to call a person named Kara. When she received no reply to her messages to Kara, Dr. Thompson went to the Camp and left a note on Kara's desk requesting that she contact them to arrange a time to meet.

15. Finally, still having received no reply to her messages, Dr. Thompson and E.M. went to "Meet the Counselor" day at the Camp on or about June 6, 2004. At the meeting, Dr. Thompson explained the importance and simple tasks necessary for the counselors to learn in order to manage E.M.'s diabetes. One of the counselors, Emily Berry, expressed interest and volunteered to be the counselor assigned to E.M. during the summer. Dr. Thompson taught Emily how to measure E.M.'s blood glucose level, the significance of

4

high and low blood sugar levels, and how to treat them with the insulin pump. At the end of the meeting, Dr. Thompson stated that she wanted to train another person as a backup and also review the procedures with Emily one more time.

16. On or about June 15, 2004, Dr. Thompson met with Korrine (or Karim), the Camp's health care employee; Megan Carmichael, the head counselor; and another counselor who has type II (adult-onset) diabetes and who also volunteered to help look after Emily. Dr. Thompson taught them what they needed to know to look after E.M. and provided them with written instructions regarding protocols to follow in managing high, low, and normal blood sugar levels.

17. On or about Tuesday, June 22, 2004, Dr. Thompson met with Peter Sylvester, the Camp program director; Emily Berry; Rachel Tierney, another counselor; and Megan Carmichael. Emily and Rachel told Dr. Thompson that they would be looking after Emily and operating her insulin pump. The procedures for managing E.M.'s diabetes were reviewed once again. At the end of the meeting, Megan thanked Dr. Thompson and stated that she felt comfortable, having heard the instructions twice.

18. E.M. and Hannah attended the first day of camp on Wednesday, June 23, 2004. When E.M.'s father, Quintus Medley, came to pick up the girls in the evening, the Camp director, Peter Sylvester, asked Dr. Medley to meet with him. He told Dr. Medley that they didn't think they could have E.M. at the Camp because she distracted the counselors from the other children. He also stated that the Wellesley health inspector told them that it wasn't legal for E.M. to be there. He denied that the Camp intended to disenroll E.M. but wanted to have further discussion with the parents. It was agreed that Dr. Thompson

or Dr. Medley would come to Camp the following day to discuss the situation.

19. After leaving the meeting, Dr. Medley spoke with Emily Berry and asked her if everything had gone well that day. She stated that everything was fine.

20. On or about Thursday, June 24, 2004, Dr. Thompson met with Bill Patche, the general manager, and the regional director from TSI's Philadelphia office. At the meeting, various options were discussed for E.M.'s care. At the end of the meeting, Mr. Patche stated that he would call later in the day about TSI's decision.

21. Later that afternoon, Mr. Patche spoke with Dr. Thompson and stated that he had discussed the situation with the counselors and their medical consultant and that the medical consultant wanted to have a questions and answer dialogue with E.M.'s doctor. He stated that E.M. would probably be able to return to camp the following Monday. Dr. Thompson gave Mr. Patche the numbers of E.M.'s physicians.

22. On or about Saturday, June 26, Mr. Patche called to say that he had not gotten in touch with E.M.'s physicians and therefore she could not attend camp on Monday.

23. On or about Monday, June 28, 2004, Dr. Thompson and Dr. Medley spoke with Mr. Patche after dropping Hannah off at the Camp. They offered to obtain any information that he wanted from E.M.'s doctor. Mr. Patche gave them a list of questions that he wanted answered and stated that if they obtained that information, E.M. would be able to attend camp on Wednesday.

24. On or about Tuesday, June 29, 2004, Dr. Thompson met with Debra Holtorf, E.M.'s nurse practitioner at the Joslin Diabetes Center, to review and discuss Dr. Thompson's proposed answers to the questions in an initial draft. Ms. Holtorf reviewed and approved

6

the answers and signed and dated the document. In order to provide the Camp with as much information as possible, Ms. Holtorf also provided copies of orders for all of E.M.'s possible treatments. Later that afternoon, Dr. Thompson gave Mr. Patche the diabetic plan and answers to all his questions as well as the additional documents supplied by Ms. Holtorf.

25. That evening, Mr. Patche called to say that E.M. could not attend camp the following day since the Wellesley Health Department and his medical consultant had not yet gotten back to him about the documents supplied by Dr. Thompson. He stated that he hoped E.M. could return to camp on Wednesday afternoon.

26. On or about Wednesday, June 30, Dr. Medley spoke to Lenny Izzo, an employee of the Wellesley Health Department. Mr. Izzo stated that the Camp should have flagged this matter as soon as they received E.M.'s medical records and obtained all necessary information before the start of camp. He promised to make inquiries into the situation. Later that day, Dr. Thompson spoke with a nurse named Holly Detroy from the Wellesley Health Department, who stated that they would review the diabetic plan of care once they received it. That afternoon, when Dr. Medley picked up Hannah at the Camp, he asked Mr. Patche about the status of the matter. Mr. Patche stated that everything was in the hands of their legal department and that he would let Dr. Medley know their decision as soon as possible.

27. On or about June 30 or July 1, Emily Berry, the counselor who had volunteered to care for E.M., attended a meeting at the Camp with representatives of the Wellesley Health Department and Camp management. The Health Department employees quizzed her on

7

her knowledge of E.M.'s care and were satisfied with her answers. Emily stated that she was comfortable in caring for E.M.. At the same meeting, Peter Sylvester, the Camp director, told Emily that she was not qualified to provide care for E.M.. He stated that even though Emily was willing to provide care, TSI would not permit E.M. to come back.

28. On or about Thursday, July 1, Dr. Thompson received a call from the Wellesley Health Department telling her that the Board and the Camp physician had approved E.M.'s plan of care.

29. Dr. Thompson then called Mr. Patche and left a message asking whether the information she had received from the Board of Health was correct. Shortly thereafter, she received a call from Gary Kendig, the TSI district manager for the Boston region. Mr. Kendig stated that the corporate managers in New York had decided that the Camp could not accommodate E.M. because her diabetes was too complex for them to handle. He stated that the Camp might be willing to accept E.M. if her parents provided a one-on-one counselor, a suggestion that Dr. Thompson rejected. She stated that she was withdrawing Hannah from the Camp and requested a refund of the tuition they had paid, to which Mr. Kendig agreed.

30. Dr. Thompson then enrolled both children in Camp Joey, a camp run by the Wellesley Recreation Department, for the following week. However the camp had no vacancies for the rest of the summer. Camp Joey was able to monitor E.M.'s diabetes without difficulty during the week that she attended.

32. As a result of defendant's actions, E.M. was deprived of an opportunity to attend camp solely because she has diabetes. She was hurt and disappointed and felt stigmatized

because of her diabetes for the first time in her life.

## V. CLAIMS FOR RELIEF

### First Claim for Relief: Title III of the Americans with Disabilities Act

33. E.M. is a person with a disability within the meaning of the ADA in that she has diabetes mellitus and is substantially limited in one or more major life activities, including eating and metabolizing food.

34. At all times relevant hereto, Defendants maintained a policy and practice of not accommodating children with insulin-dependent diabetes in their recreational camping program.

35. As described above, Defendants discriminated against E.M. and other children with insulin-dependent diabetes by excluding them from participation in and denying them the benefits of their services, programs, or activities and by subjecting them to discrimination on the basis of disability in violation of section 302 of Title III of the ADA, 42 U.S.C.§ 12182, and its implementing regulations at 28 C.F.R. Part 36.

36. Defendants have subjected E.M. to discrimination on the basis of disability in the provision of services, programs, or activities of a public accommodation by failing to make reasonable modifications in policies, practices, and procedures as necessary to avoid discrimination on the basis of disability by refusing to allow Camp staff to assist E.M. with her care, in violation of section 302(b)(2)(A)(ii) of title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), and its implementing regulations at 28 C.F.R. § 36.302.

37. Defendants have imposed eligibility criteria, for the privilege or advantage of receiving

services, that screen out the class of individuals who have diabetes, in violation of 42 U.S.C. § 12182(b)((2)(A)(i).

Second Claim for Relief: The Massachusetts Public Accommodations Law

38. E.M. is a person with a disability within the meaning of the Massachusetts Public Accommodations Law in that she has diabetes mellitus and is substantially limited in one or more major life activities, including eating and metabolizing food.

39. The Massachusetts Public Accommodations Law, M.G.L. c. 272 § 98, requires places of public accommodation, including recreational programs, to provide people with disabilities with "full and equal accommodations, advantages, facilities and privileges."

40. Defendants violated the Massachusetts Public Accommodations Law by failing to provide E.M. with full and equal access to its programs and services.

41. As a result of that violation of the Massachusetts Public Accommodations Law, E.M. was deprived of the opportunity to participate in Defendants' summer camp program and experienced severe emotional distress.

VI. REMEDY

WHEREFORE, plaintiff prays that the Court provide relief as follows:

a. Declare that the discriminatory practices, policies, and procedures of the Defendants, as set forth above, violate Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189, and the Department of Justice's implementing regulations, 28 C.F.R. Part 36;

b. Declare that the discriminatory practices, policies, and procedures of the Defendants, as set forth above violate the Massachusetts Public Accommodations Law, G.L. c. 272 § 98;

c. Enjoin the Defendants, their officers, agents, and employees, and all other persons in active concert or participation with any of them, from discriminating on the basis of disability, including, but not limited to, insulin-dependent diabetes;

d. Order the Defendants to develop and implement a plan to provide appropriate services to individuals with disabilities, including, but not limited to people with insulin-dependent diabetes, when necessary to enable such individuals to participate in their programs and services;

e. Order the Defendants to design and implement appropriate staff training programs to ensure that all staff who have contact with program participants are knowledgeable about policies related to provision of services to people with insulin-dependent diabetes;

f. Award monetary damages to the plaintiff to compensate her for the injuries resulting from such discrimination, including damages for emotional distress;

g. Award plaintiff the costs of this action, including a reasonable attorney's fee; and

h. Award such additional relief as is just.

Plaintiff claims a trial by jury.

                                      E.M.
                                      By her attorney,

                                      _/s/ Jane K. Alper_
                                      Jane K. Alper BBO #016140
                                      Disability Law Center, Inc.
                                      11 Beacon Street, Suite 925
                                      Boston, MA 02108
                                      (617) 723-8455 Ext. 135
                                      jalper@dlc-ma.org

March 28, 2005

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
E.M., by her mother, Kay Thompson

**DEFENDANTS**
TSI Sports International, Inc. and TSI Wellesley, Inc.

(b) County of Residence of First Listed Plaintiff: **Norfolk**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number): Jane Alper, Esq., Disability Law Center, 11 Beacon Street, Ste. 925, Boston, MA 02108 (617) 723-8455

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**42 U.S.C. Section 12181 et seq.**

Brief description of cause:
**Exclusion from recreational program because of disability.**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 4-6-05
SIGNATURE OF ATTORNEY OF RECORD: /s/ Jane Alper

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __E.M. v. TSI Sports International, Inc.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ___   I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   XX    II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

   ___   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

   ___   IV.   220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

   ___   V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES ☐    NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☒    NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☒    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Jane K. Alper
ADDRESS   Disability Law Center, 11 Beacon Street, Ste. 925, Boston, MA 02108
TELEPHONE NO.   (617) 723-8455

(CategoryForm.wpd - 2/15/05)