IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| E.M., by her mother and next friend, KAY THOMPSON | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Plaintiff Intervenor, | ) ) | |
| v. | ) ) | C.A. No. 05-10611-GAO |
| TOWN SPORTS INTERNATIONAL, INC. and TSI WELLESLEY, INC., | ) ) ) | |
| Defendants. | ) | |

STIPULATED SETTLEMENT AGREEMENT,
FINAL JUDGMENT, AND CONSENT ORDER

Plaintiff E.M., by her mother and next friend, Kay Thompson, and the United

States of America as plaintiff-intervenor (collectively referred to as "Plaintiffs") initiated

this action pursuant to title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 12181-12189, and the Department of Justice implementing regulations, 28 C.F.R. Part

36.  Plaintiffs allege, inter alia, that defendants Town Sports International, Inc. and TSI

Wellesley, Inc. (collectively referred to as "Defendants" or "TSI") violated title III of the

ADA when according to Plaintiffs, TSI removed E.M. from the TSI Wellesley's

Children's Camp ("TSI Camp") on the basis of disability after one day of camp, and

denied reasonable requests that the Camp permit E.M. to attend TSI Camp and supervise

E.M. in testing her blood glucose level and administering insulin to her using her insulin pump in addition to other daily diabetes care practices.

Plaintiff E.M.'s and the United States' Complaints (collectively, "Complaints") allege, inter alia, that TSI's failure to make reasonable modifications in policies, practices, and procedures when necessary to provide appropriate supervision or assistance to E.M. or other campers with diabetes in order to ensure safe participation in the TSI Camp constitutes discrimination on the basis of disability within the meaning of Section 302 of the ADA, 42 U.S.C. § 12182, and its implementing regulation, 28 C.F.R. § 36.302. Plaintiff E.M.'s Complaint also alleges, inter alia, violations of the Massachusetts Public Accommodations Law ("MPAL"), M.G.L. c. 272, § 98.

This Stipulated Settlement Agreement, Final Judgment, and Consent Order ("Consent Order") resolves, fully and finally, Plaintiffs' Complaints filed in this Court and allegations Plaintiffs may have against Defendants and/or all matters surrounding the United States Department of Justice ("DOJ's") investigation of TSI. Plaintiff E.M., through her counsel, filed this action on March 29, 2005, alleging that TSI discriminated against E.M. on the basis of her diabetes in violation of the ADA and Massachusetts state law. The United States has moved to intervene as a plaintiff in this action. Plaintiff E.M., the United States, and TSI (collectively referred to as "the parties") have voluntarily joined in this Consent Order in order to amicably resolve this dispute without further litigation or investment of additional time and resources.

C.A. No. 05-10611-GAO

## Jurisdiction and Venue

1.     Plaintiffs allege that the Court has jurisdiction over this action under 42 U.S.C.

§ 12188(b)(l)(B), and 28 U.S.C. §§ 1331 and 1345.  Plaintiffs allege that venue is proper

in this District pursuant to 28 U.S.C. § 1391.

2.     Subject to paragraph 12 in this Consent Order, the parties agree that the Court has

authority to grant equitable relief, declaratory relief, monetary damages, and civil

penalties pursuant to this Order and to the same degree as set out under 42 U.S.C.

§§ 12188(b)(2), 28 U.S.C. §§ 2201 and 2202.

## Contentions of the Parties

3.     Plaintiffs contend that Town Sports International, Inc. and TSI Wellesley, Inc. are

private entities that own, lease, or operate places of public accommodation within the

meaning of section 301 of the ADA, 42 U.S.C. § 12181, and are, therefore, public

accommodations within the meaning of title III of the ADA, 42 U.S.C. § 12181(7) and 28

C.F.R. § 36. 104.  For purposes of the Consent Order only, TSI agrees that it is subject to

the requirements of title III of the ADA.  Plaintiff E.M. separately asserts that TSI is a

covered entity under the Massachusetts Public Accommodations Law ("MPAL"), M.G.L.

c. 272, § 98.

4.     The United States Department of Justice ("the DOJ" or "the Department of

Justice") is the federal government agency responsible for administering and enforcing

title III of the ADA, 42 U.S.C. §§ 12181-12189.

5.     The Attorney General has authority under 42 U.S.C. § 12188(b)(l)(A)(i) to

conduct investigations of alleged violations of title III, and has investigated whether TSI

refused to modify its policies prohibiting E.M. from attending the TSI Camp.  E.M.

alleges that she uses an insulin pump as a treatment for her Type I diabetes and E.M.'s

parents had requested assistance from TSI staff to help E.M. to regularly monitor her own

blood sugar level and blood glucose testing as well as her use of her insulin pump

equipment.

6.      Plaintiffs assert specifically that TSI's policy and its conduct discriminate against

individuals on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of a place of public

accommodation, in violation of 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a) by

failing to (1) make reasonable modifications in policies, practices, or procedures, in

violation of 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302(a); and (2) provide an

individual or class of individuals on the basis of a disability or disabilities with goods,

services, facilities, privileges, advantages or accommodations that are different from

those provided to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(iii) and 28

C.F.R. § 36.202(c).

7.      TSI denies each and every allegation of Plaintiffs, including but not limited to,

those in the preceding paragraphs, in Plaintiff E.M.'s and the United States' Complaints

and/or the alleged results of the investigation conducted by the DOJ.  Furthermore, TSI

asserts that at all times TSI has acted, is acting, and will continue to act consistently with

the Americans with Disabilities Act, MPAL, and local law.  This Consent Order does not

constitute an admission of liability.  Nothing in this Consent Order, including the

payment of any sums by TSI, constitutes an admission by TSI of such wrongdoing or

liability, or otherwise constitutes an admission of a violation of the ADA, MPAL, or any

local law.  Nothing in this Consent Order affects or interferes with Defendants'

continuing responsibilities to comply with the ADA, MPAL, and other applicable federal, state and local laws.

8.    The parties wish to amicably resolve this matter without resort to further litigation, believe that resolution of this matter is in the public interest through a Consent Order, which terminates three (3) years from the entry date of this Consent Order.

WHEREFORE, the parties hereby agree and stipulate to the Court's entry of a Consent Order resolving the case as follows:

9.    Injunctive Relief

a.    TSI agrees not to discriminate against any camper on the basis of the disability of diabetes; that is, TSI agrees to provide all campers with diabetes with an equal opportunity to attend TSI camps and to participate in all programs, services, or activities provided by TSI to the extent of nondisabled applicants and/or campers, unless the presence or participation of that camper poses a "direct threat." The definition of "direct threat" to others is governed by 28 C.F.R. § 36.208.

b.    TSI may invoke the "direct threat" defense to deny participation to any applicant or camper with diabetes if the following procedure is followed: (1) TSI completes a written individual assessment of the camper including review of medical records provided by the camper or the family -- the assessment must be based upon reasonable judgment and current medical evidence and signed by a licensed medical doctor with expertise in the treatment of diabetes in children who is not routinely employed by TSI; (2) the assessment will take into

consideration: (a) the nature, duration, and severity of the risk; (b) the probability

that the risk will actually occur; and (c) a written finding that reasonable

modification of policies, practices or procedures will not mitigate or ameliorate

the risk; and (3) the written, signed findings from the consulting physician will be

received by the Plaintiff United States within three (3) working days of the

decision to deny an application or to expel a camper from a TSI program.  In the

event that the findings are disputed by Plaintiff United States, Plaintiff United

States shall provide reasonable notice to Defendant of such dispute and a

reasonable opportunity to resolve, after which Plaintiff United States and/or

Defendant may ask the Court to review the decision not to admit or to expel a

camper.

c.     TSI may invoke the defense of fundamental alteration of the camp

program, services or activities to deny an application or to expel a camper

pursuant to 28 C.F.R. § 36.302, only after providing written notice to Plaintiff

United States detailing the facts and circumstances related to the decision to

invoke the "fundamental alteration" defense that shall be received by Plaintiff

United States at least three (3) business days in advance of any action taken by

TSI that is or may be adverse to the camper or applicant with diabetes.  In the

event Plaintiff United States disputes the allegation that admitting a child with

diabetes would cause "fundamental alteration," Plaintiff United States shall

provide reasonable notice to Defendant of such dispute and a reasonable

opportunity to cure, after which Plaintiff United States and/or Defendant may

seek review of the decision and Plaintiff United States and Defendant may initiate any appropriate investigation or other action to enforce this Consent Order.

d.      TSI agrees to evaluate, on a case by case basis, and make reasonable accommodations to campers with diabetes and such accommodations may include but not be limited to supervising and monitoring of camp participants with diabetes while using blood glucose monitoring tests, insulin pumps, syringes, or other diabetes related medical equipment or consumption of food while participating in any TSI Camp program, service, or activity whether on TSI premises or elsewhere while attending TSI Camp.

e.      TSI will not refuse to admit any child at any of its TSI Camps on the basis that the child has diabetes or requires diabetes care unless, after a case by case analysis, the terms of the Consent Order cannot be fulfilled, including, but not limited to, situations in which the child poses a "direct threat" and/or would require "fundamental alteration" of the program, service or activity.

f.      TSI will take necessary steps to ensure that a child's diabetes care is integrated into the usual routine at TSI Camps to the greatest extent possible in accordance with the Americans with Disabilities Act.

g.      TSI hereby adopts the policy, effective thirty (30) days after the entry of this Consent Order, entitled "Camp Policy on Diabetes Management" ("Camp Policy"), which is attached hereto as Appendix A and is incorporated herein by reference. TSI will print and maintain copies of the Camp Policy in a central location, provide the policy to any interested party requesting it, and will incorporate the policy into its standard operating policies for all TSI Camps in

accordance with applicable state and local law and the Americans with

Disabilities Act.

h.      TSI will provide training as set forth in the Policy.

i.      When informed that a child who has applied to a TSI Camp has diabetes,

TSI will:

(1)      Advise the camper's parents, guardians, or caretakers of the Camp Policy

on Diabetes Management (attached hereto as Appendix A), and advise that the Camp will

comply with all applicable federal, state, and local laws;

(2)      Unless circumstances permit otherwise, no less than twenty (20) business

days prior to the Camp start date consistent with the Policy, require that the camper's

parents shall provide TSI with the following (to the extent that TSI would like any

additional information or documentation, it shall provide the United States with advanced

written notice of such request):

(i)      Completed typewritten Diabetes Management Plan, an example of which

is attached as Appendix B, clearly detailing any and all necessary care for the camper's

diabetes management and signed by the camper's primary care physician or

endocrinologist;

(ii)      Completed Physical Exam Form, Appendix C attached hereto, and any

other clear, type written health-related documents deemed relevant by the camper's

primary care physician or endocrinologist;

(iii)      Information regarding all equipment, food, and substances to be provided

by the camper's parents/guardians before the first day and not regularly provided by the

Camp that are necessary to meet or comply with the camper's Diabetes Management

Plan, the Physical Exam Form, the Camp Policy, and the health related documents mentioned in the preceding subparagraph (ii);

(iv)    Written permission to undertake steps indicated on the camper's Diabetes Management Plan (provided by the camper's parents or guardians) and to respond to any diabetes-related or other emergency in a manner consistent with those instructions and/or emergency protocols;

(v)    Executed general release and waiver of liability for care in a form required of all campers as a prerequisite to attendance that is substantially similar to Appendix D, attached hereto. This document releases the releasees and their agents from liability stemming from any action relating to the care of the camper, regardless of diabetes.

(vi)    Information regarding containers for proper disposal and maintenance of all materials including, but not limited to, keeping the camper's blood glucose meter and insulin pump in good working order (including, but not limited to, cleaning and performing controlled testing per the manufacturer's instructions); and

(vii)    Reasonable availability of parents, guardians and/or their designees to attend meetings and/or the first day of camp and/or be available in conformance with the Policy.

(3)    Communicate with parents or guardians as set forth in the Policy and Medical Management Plan about the camper's diabetes management, diabetes care or diabetic health-related concerns;

(4)    Encourage compliance with the Medical Management Plan and Policy, independence, and self-care consistent with the camper's ability, skill, maturity, and development level; and

(5)    Respect the camper's and his or her family members' rights to confidentiality and privacy consistent with all pertinent local, state, or federal laws, regulations, or requirements.

j.    Within sixty (60) days of the effective date of this Consent Order, TSI will appoint a company-wide Diabetes Coordinator or equivalent to address diabetes-related questions and to assure timely responses to any camper, prospective camper, parent, or guardian.

k.    TSI will instruct each TSI Camp Director to consult with the TSI Diabetes Coordinator before rejecting any application for enrollment on behalf of a child with diabetes to the extent that the Camp Director or other TSI decision-maker(s) is aware that such child is a person with diabetes within the meaning of the ADA or applicable state law.  TSI will maintain a record at its headquarters of all such admission inquiries on behalf of children with diabetes, including insulin-dependent diabetes, and the disposition of such inquiries for a period of three years from the date of the inquiry.

l.    Nothing in this Consent Order is intended to cause TSI to violate any provision of any state or local law.  None of the parties to this Consent Order are aware of any state, local and/or municipal law in Massachusetts that prevents TSI from enrolling and caring for children as provided in this Consent Order.  Plaintiff United States and TSI will consult on changes proposed to the Policy at least twenty (20) business days before any policy incorporated by reference herein is amended.  Approval by the United States is not automatic and the United States

and/or Defendant may seek review of the Court of any proposed changes consistent with provisions in paragraph 12 of this Consent Order.

10.    Releases and Monetary Relief

a.    In settlement of Plaintiff E.M.'s claims alleged against TSI, Plaintiff E.M. shall recover from TSI, and TSI shall pay a check in the amount of $25,000.00 (twenty five thousand dollars and no cents), payable to E.M.

b.    In settlement of Plaintiff E.M.'s claims alleged against TSI, TSI shall provide a check in the sum of $20,000.00 (twenty thousand dollars and no cents) payable to the Disability Law Center, Inc. for attorneys' fees, costs and disbursements.

c.    In settlement of the United States claims against TSI, within thirty (30) days of the entry of this Consent Order, TSI will pay to the United States the sum of $5,000.00 (five thousand dollars and no cents) by check payable to the United States Treasury.

11.    Releases.  In exchange for payment of damages, attorneys' fees, and costs which have been negotiated by TSI and E.M. pursuant to terms included in Appendix E and in this Consent Order, attached hereto, Plaintiff E.M., her parents, guardians and anyone claiming by, through, or for Plaintiff as set forth in Appendix E agrees to the terms of a release Appendix E, attached hereto, which E.M.'s parents or guardians will sign.  The United States, through all of its entities including the DOJ, agrees not to sue the Defendants in conjunction with its investigations relating to this case and on all matters relating to this case prior to executing this Consent Order, including, but not limited to, those set forth in this Consent Order.  The parties agree that should any party violate this

Consent Order, there are remedies set forth in paragraph 12(a) of this Consent Order,

except as noted in paragraphs 9(b) & (c) of this Consent Order requiring reasonable

notice and a reasonable opportunity to cure.

12.    Monitoring

a.    Plaintiffs may review compliance with this Consent Order as applicable to

each particular plaintiff, and any policy incorporated herein by reference, at any

time. If Plaintiffs believe that TSI is not in compliance with this Consent Order or

any requirement contained herein, Plaintiffs agree to notify TSI in writing of the

alleged noncompliance and attempt to seek a resolution of the matter with TSI.

TSI shall have ten (10) business days from the date of the notice in which to

correct the alleged noncompliance. If, after this 10 day notice and opportunity to

cure, the parties are unable to reach a resolution, Plaintiff E.M. may seek

appropriate relief from this Court for any violations of the Agreement that directly

apply to herself; and/or the DOJ on behalf of the United States may seek

appropriate relief from the Court for violations of the Agreement; and/or

Defendants may seek appropriate relief from the Court for violations of the

Agreement by any or all Plaintiffs. The United States and TSI may enforce this

Consent Order only to the extent it pertains to children with diabetes.

b.    TSI will enforce and monitor its compliance with the terms of this Consent Order

and all referenced policies. Should the parties seek to modify any policy referenced in

this Order or adopted pursuant to this Order, the parties agree to exchange a copy of the

proposed revision and any reasons for proposing it in the following manner: to the extent

that change affects Plaintiff E.M.'s rights under this Consent Order, TSI will exchange a

copy of the proposed revision and reasons for proposing it to E.M.'s parents or guardians; and/or to the extent that change affects Plaintiff United States, TSI will exchange a copy of the proposed revision and reasons for proposing it to counsel for the United States. Counsel will review the information on an expedited basis. If any party's counsel objects to the proposed revision, the parties and/or their counsel will meet and confer promptly over the issue. If the parties are unable to reach agreement on the revision, they shall move the Court for resolution of the issue. The existing policy will remain in effect until a final resolution is reached either by agreement of the parties or by Court Order issued following the procedures set forth above including the "meet and confer" conference requirement.

c.    TSI will provide written reports to the United States regarding compliance with this Consent Order. The first report will be due two months after the Consent Order is entered and will be limited to a report verifying that TSI has complied with paragraph 9(g) of this Consent Order. The second, third, and fourth reports shall be due six (6), eighteen (18) and thirty (30) months, respectively, from the entry of the Consent Order. The second, third and fourth report must state the number of applicants with diabetes who applied to attend any TSI program, the particular diabetes care requested for such applicant, the procedure followed to determine whether to admit such applicant to TSI program, any reason admission to the TSI program was denied, and if an applicant was admitted, what diabetes care was agreed upon. TSI will maintain records to document all statements in the report. TSI shall also submit detailed information about any complaints to TSI by campers with diabetes or their parents or guardians, or actions taken by TSI that involve any camper who has diabetes, including any decision to deny a camper's

request for an accommodation after admission to the camp or any request or other action by TSI that contributes to a camper's removal or departure before the end of a session for which the camper was enrolled. The parties agree to adhere to all requirements for confidentiality under the ADA.

13.    Notices. All notices, reports, or other such documents required by this Consent Order shall be sent to the parties by (a) hand delivery with signed receipt from the individuals mentioned below or other such persons as the parties may designate in writing in the future, and/or (b) fax and, delivery via certified mail, return receipt requested, to the following addresses or to such other person as the parties may designate in writing in the future:

> For notices to Plaintiff E.M. and Kay Thompson:
>
> Stanley Eichner, Director
> Pamela Coveney, Staff Attorney
> Disability Law Center, Inc.
> 11 Beacon Street, Suite 925
> Boston, Massachusetts 02108
> (617) 723-8455
> (617) 723-9125 (facsimile)
>
> For notices to the Department of Justice:
>
> John L. Wodatch, Chief
> Attention: Robert Mather
> Disability Rights Section
> Civil Rights Division
> U.S. Department of Justice
> 1425 New York Avenue, NW
> Washington, D.C. 20005
> (202) 305-8454
> (202) 305-9775 (facsimile)
>
> For notices to TSI:
>
> Brian S. Cousin
> Shareholder

Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166
(212) 801 9354
(212) 805-9354 (facsimile)

and

Maria Hallas
Of Counsel
Greenberg Traurig, LLP
800 Connecticut Avenue, Suite 500
Washington, D.C. 20006
202-533-2312
202-261-2668 (facsimile)

and

Robert S. Herbst
General Counsel
Town Sports International, Inc.
888 Seventh Avenue
New York, New York  10106
917-351-6680 ext. 1230
212-246-8466 (facsimile)

14.     Entire Agreement.  This Consent Order, and any appendices attached, constitute

the entire agreement between the parties on the matters raised herein, and no other statement,

promise, or agreement, either written or oral, made by any of the parties or agents of any of

the parties, that is not contained in this written Consent Order or exhibits or attachments,

shall be enforceable regarding the matters raised herein.

15.     Copies Available.  A copy of this Consent Order may be made available by the

United States or TSI to any person and will be provided by the United States in hard copy

upon request.

16.     Consent Order Binding on Parties and Successors in Interest.  This Consent Order

shall be binding on all parties, including all principals, executors, administrators,

representatives, successors in interest, beneficiaries, assigns, heirs, and legal representatives thereof. Each party has a duty to so inform any such successor in interest and to timely notify in writing all parties and the United States of all such successors. In the event that TSI seeks to transfer or assign all or part of its interests in any facility covered by this Consent Order, other than a transfer or assignment to a TSI subsidiary or affiliate, and the successors or assigns intend to carry on the same or similar use of the facility, as a condition of sale, TSI shall obtain the written agreement of the successor or assign to comply with all terms and fulfill any obligations remaining under this Consent Order for the remaining term of the Order.

17.       This Consent Order fully and finally resolves any and all of the allegations of Plaintiff E.M. and/or Plaintiff United States in this case. It does not purport to remedy other potential violations of the ADA, MPAL or local law by TSI.

18.       Standing to Enforce. No parties other than Plaintiffs and TSI and TSI's successors in interest may enforce the terms of this Consent Order.

19.       Full and Final Settlement. The receipt of the funds as set forth in paragraph 10 of this Consent Order is in full and final accord, satisfaction, and final compromise and settlement of Plaintiffs' causes of action and disputed claims against Defendants for liquidated damages, compensatory damages, punitive damages, attorneys' fees, court costs, and any and all other monetary and equitable relief.

20.       Representations of No Other Claims. Plaintiffs, including the United States, represent that they are aware of no other claims, actions and/or cases, asserted or unasserted, under the ADA against one or more of the entities comprising Defendants or their parents, subsidiaries, affiliates, agents or representatives.

21.        <u>Execution.</u>  The parties agree to execute six (6) originals of this Consent Order. Faxed signatures shall constitute original signatures for purposes of binding the individual parties.

22.        <u>Term of the Consent Order</u>.  This Consent Order shall be in full force and effect for a period of three (3) years after the date of entry of this Consent Order.  The Court shall retain jurisdiction to enforce this Consent Order.

23.        <u>Severability</u>.  If any term of this Consent Order is determined by any court to be unenforceable, the other terms of this Consent Order shall nonetheless remain in full force and effect.

24.        <u>Signatories Bind Parties</u>.  Signatories on behalf of the parties represent that they are authorized to bind the parties to this Consent Order.

25.        <u>E.M.'s Guardians and Parents.</u>  Plaintiff E.M. represents that Kay Thompson and Quintus Medley comprise all of her parents and guardians and, besides these persons, there are no other parents and/or guardians for Plaintiff E.M.

26.        <u>Term</u>.  The individual terms "parent", "parents", "guardian," and/or "guardians" shall be interpreted to mean all parents and guardians.

27.        <u>Non-Waiver</u>.  Failure by Plaintiffs to seek enforcement of this Consent Order pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances or provisions.

SO ORDERED, this the ___ day of _____, 2006,

_____

United States District Court Judge George A. O'Toole Jr.

ACCEPTED AND AGREED TO this the ___ day of _____ 2006.

C.A. No. 05-10611-GAO

COUNSEL FOR Plaintiff E.M. by her mother and next friend KAY THOMPSON:


STANLEY EICHNER
Director
PAMELA COVENEY
Staff Attorney
DISABILITY LAW CENTER, INC.
11 Beacon Street, Suite 925
Boston, Massachusetts 02108
(617) 723-8455
(617) 723-9125 (facsimile)


KAY THOMPSON
Plaintiff E.M. by her mother and next friend

19 of 22

COUNSEL FOR THE UNITED STATES:

ALBERTO GONZALES
Attorney General of the United States

MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts

WAN J. KIM
Assistant Attorney General
Civil Rights Division

JOHN L. WODATCH
Chief, Disability Rights Section
PHILIP L. BREEN
Special Legal Counsel, Disability Rights
Section
RENEE M. WOHLENHAUS
Deputy Chief, Disability Rights Section

BARBARA HEALY SMITH
Assistant United States Attorney
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3263
barbara.h.smith@usdoj.gov

ROBERT MATHER
Senior Trial Attorney
Disability Rights Section
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
(202) 307-2236
(202) 307-1198 (facsimile)
Robert.Mather@usdoj.gov

C.A. No. 05-10611-GAO

COUNSEL FOR DEFENDANTS

Annapoorni R. Sankaran, BBO #631065
GREENBERG TRAURIG LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (facsimile)

*Of Counsel*

BRIAN S. COUSIN
Shareholder
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166

MARIA HALLAS
Of Counsel
Greenberg Traurig, LLP
800 Connecticut Avenue, Suite 500
Washington, D.C. 20006

21 of 22

C.A. No. 05-10611-GAO

COUNSEL FOR DEFENDANTS

Annapoorni R. Sankaran, BBO #631065
GREENBERG TRAURIG LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (facsimile)

*Of Counsel*

BRIAN S. COUSIN
Shareholder
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166

MARIA HALLAS
Of Counsel
Greenberg Traurig, LLP
800 Connecticut Avenue, Suite 500
Washington, D.C. 20006

21 of 22

C.A. No. 05-10611-GAO

SIGNATORY FOR DEFENDANT TOWN SPORTS INTERNATIONAL, INC.

Printed Name: _ROBERT S. HEARST_

Title: _VP AND GENERAL COUNSEL_

SIGNATORY FOR DEFENDANT TSI WELLESLEY, INC.

Printed Name: _ROBERT S. HEARST_

Title: _VP AND GENERAL COUNSEL_

22 of 22

**APPENDIX A**

**Camp Policy on Diabetes Management**

This Camp is committed to complying fully with the Americans with Disabilities Act ("ADA") and any other applicable laws and regulations pertaining to campers with disabilities.

Children with diabetes Type I or Type II who attend the Camp may require assistance with diabetes management. The management regime of every child with diabetes may be different and, for this reason, it is the view of the Camp that one Policy cannot dictate the particular protocol followed by the Camp for all individuals. The Camp will make an individual assessment of the special needs of each camper with diabetes on a case-by-case basis and will work with families to provide reasonable accommodations to campers with diabetes in accordance with applicable laws. Successful participation and accommodation of the campers depends on an actively cooperative relationship and ongoing communication between the parents or guardians of the campers and the Camp.

Parents or guardians who wish to enroll a prospective camper with diabetes for camp before the summer camp season begins should submit a complete application for the camper at least one month ahead of the scheduled start date for each camp session to permit adequate time for the Camp staff to meet with the parents or guardians of the camper to examine the individual needs of the applicant on a case-by-case basis and to take appropriate steps to comply with pertinent laws. Within a week of the camper's registration for a particular camp session, the Camp will send to the camper's parents or guardians an application packet identical to that provided to all campers including a copy of this Policy, a medical management plan form, a Physical Exam Form, and a release. At least twenty (20) business days prior to the beginning of the camper's first day of camp, the parents or guardians of a camper with diabetes will send the Camp's Health Supervisor a completed diabetes management plan form, typewritten in easy to understand terms, detailing care necessary for the camper's safety; a completed Physical Exam Form, and a signed general release identical to the release required of all campers regardless of disability.

Parents or guardians who wish to enroll a prospective camper with diabetes for camp during the summer camp season less than one month prior to a preferred camp session should so notify the camp, submit a complete application for the camper, complete diabetes management plan form as mentioned above and comply with the remaining aspects of this Policy with sufficient time to allow the Camp to make good faith efforts for admission of the camper consistent with the spirit of this Policy. For current campers who during the course of a session require treatment for diabetes for the first time, the parents or guardians of these campers should quickly notify the camp, submit the completed management plan form as set forth above, and comply with the

A-1

remaining aspects of this Policy with sufficient time to allow the Camp to make good faith efforts for admission to and/or continuation of the camp consistent with this Policy.

Because each child's care is different and the activity levels of each child may be different, this policy should not be construed to prevent the Camp from working with health care professionals and the camper's guardians and/or parents in an effort to expedite the camper's admission or improve the camper's experience at camp.

Parents or guardians will be available at the Camp's request to attend and participate on the first day of camp with the camper and, if deemed necessary by either party, to attend a prior run through of the first day, and to continue to meet with and advise the camper's counselors about proper diabetes care for the camper. Parents will be available by phone or have other emergency contacts (which may include the camper's health care provider) available by phone each day that the camper is participating in Camp to answer questions from the Camp or the camper regarding the camper's management of diabetes care and to approve particular actions related to proper care when necessary.

Parents or guardians will provide specific information and training about the camper's diabetes and particular needs related to diabetes care to the camp, and will permit the camper's personal health care providers to share information with the Camp staff and other health care personnel when necessary to assure the camper's safety and compliance with the camper's Diabetes Management Plan.

Parents or guardians will promptly inform the camp of relevant changes in the camper's health status. The parents or guardians will provide, along with instructions about proper maintenance or use of all items, all supplies and equipment necessary for the camper's safe participation at camp in advance.

Parents or guardians will provide and properly maintain all supplies and equipment for the camper's diabetes and assist with proper disposal of equipment and supplies. Parents or guardians will provide written permission to undertake the steps indicated on the camper's Diabetes Management Plan and physical exam form, and will provide all applicable releases in writing before the first day that the camper participates at a TSI camp.

**Training Camp Personnel**

In accordance with applicable law, including those regulations enforced by the applicable Department of Public Health, if a child with diabetes applies for any TSI Camp, TSI will arrange for either a registered nurse or a certified diabetic educator to provide basic training to the appropriate Camp personnel. That basic training will include a general overview of diabetes and typical health care needs of diabetics, recognition of common symptoms of hypoglycemia and hyperglycemia, and will introduce the Health Supervisor and discuss ways to get help quickly.

Each Health Supervisor and any camp staff who are working directly with campers with diabetes will have received training that enables the Camp to provide all care required to comply with applicable law. Such training includes (but may not be limited to) an overview of diabetes, general information on how to recognize signs and symptoms of hypoglycemia and hyperglycemia, diabetic care practices related to glucose monitoring and regulating glucagon and insulin administration, including by insulin pump. In addition, depending on the unique needs of the camper, training may include information about dietary requirements for diabetics in general and particular information about dietary requirements for particular campers, and training and guidance from parents or guardians of campers about any reasonable accommodations needed by a camper as identified in each camper's Diabetes Management Plan (which is to be provided by the parent or guardian to the Camp 20 business days prior to the first day of camp) and related documents. Parents or guardians must provide information and training necessary for staff to be trained with regard to any unique needs of their camper.

**Monitoring Blood Sugar Levels**

Parents or guardians will check the camper's blood sugar level prior to camp each morning to ensure they are within the established "target range" in the camper's diabetes medical management plan. Parents or guardians agree to be available for the Camp or its staff to contact parents or guardians as deemed necessary to provide information, assistance, or guidance so that the Camp satisfies each camper's Diabetes Management Plan. If the camper self-identifies, or camp staff recognizes symptoms of hyperglycemia or hypoglycemia, the Camp staff will assist the camper to check blood sugar and treat the symptoms. The Camp will assess the level of assistance or supervision that is reasonable depending on the individual needs of the camper in the particular situation and provide whatever assistance is appropriate in the situation consistent with the Plan and applicable law.

Further, parents or guardians will furnish all appropriate meals and snacks for the camper, and will ensure that the carbohydrate content falls within the proper amounts set forth in the Diabetes Management Plan so that the totals will be predetermined and calculated by the parents. Carbohydrate values will be calculated and provided on labels on each food item provided by the parents so that the Camp may monitor the appropriate use of insulin and insulin pumps or other equipment to administer insulin.

At the onset of any symptom of hyperglycemia or hypoglycemia, the camper will notify the counselor or Health Supervisor that the camper needs to have a glucose test. Should the counselor or the Health Supervisor notice any symptom(s) of hyperglycemia or hypoglycemia, the counselor or the Health Supervisor will take steps reasonably consistent with the Diabetes Management Plan.

**Insulin and Insulin Pumps**

Campers with diabetes are responsible for arriving at camp with all necessary supplies. Campers may carry their own medical supplies and snacks in a safe fashion that is legally compliant so that these supplies are in close proximity to the camper. To that end, campers with insulin pumps are expected to come to camp with a fully functional pump, back-up insulin and syringes, and glucose tablets for low sugar episodes, and any other equipment necessary for that camper. When the camper cannot hold these supplies, the Counselor or Heath Supervisor will hold them.

Nothing in this process shall prevent the Camp from exercising its discretion for the benefit of the child. This policy is not intended to provide fixed rules for dealing with all care involving diabetes; however, the policy sets a minimum standard for ADA compliance. This policy is not intended to serve as a contract with any individual camper. The policy may be modified and/or updated at any time following prior approval by the Department of Justice during the pendency of the Consent Order in the case identified below, but may be changed without prior notice by a written statement to individual campers. Absent written notice from TSI Camps, no representative of the Camp, other than the Diabetes Coordinator, is authorized to make written or oral representations regarding the statements contained in this Policy. Should you have any questions, the Health Supervisor or Diabetes Coordinator will be happy to answer your questions or help you get the information you need. Based on information currently available to the Department of Justice in connection with the Consent Order in Civil Action 05-1-611-GAO in the United States District Court for the District of Massachusetts, this policy has been approved by the United States Department of Justice.

**APPENDIX B**

**Date of Plan:** _____

## Example Diabetes Medical Management Plan

*This plan should be completed by the camper's personal health care team and parents/guardian and immediately updated by these persons with any new information. It should be reviewed with relevant camp staff and copies should be kept in a place that is easily accessed by camp staff, trained diabetes personnel, and other authorized personnel. The answers should be typed.*

Effective Dates: _____

Camper's Name: _____

Date of Birth: _____

Date of Diabetes Diagnosis: _____

Grade: _____

Camp Counselor(s): _____

Physical Condition:  ☐ Diabetes type 1   ☐ Diabetes type 2

Contact Information: *Circle the primary contact person and phone number of that person*

Mother/Guardian: _____

Address: _____

_____

Telephone: Home _____ Work _____ Cell_____

Father/Guardian: _____

Address: _____

_____

Telephone: Home _____ Work _____ Cell _____

Camper's Doctor/Health Care Provider:

Name: _____

Address: _____

Telephone: _____

Emergency Number: _____

Who has custody of the child?

_____

Other Emergency Contacts:

Name:

_____

Relationship:

_____

Telephone: Home _____ Work _____ Cell _____

Notify parents/guardian or emergency contact in the following situations: _____

_____

_____

Blood Glucose Monitoring

Target range for blood glucose is ☐ 70-150 ☐ 70-180 ☐

Other _____

Usual times to check blood glucose _____

Times to do extra blood glucose checks (*check all that apply*)

☐ before exercise

☐ after exercise

☐ when camper exhibits symptoms of hyperglycemia

☐ when camper exhibits symptoms of hypoglycemia

☐ other (explain): _____

Can camper perform own blood glucose checks? ☐ Yes ☐ No

Exceptions: _____

_____

Type of blood glucose meter camper uses: _____
*(include model and instruction booklet):* _____

_____

What signs does the camper demonstrate when glucose levels are low or high?

_____

_____

Insulin

Usual Lunchtime Dose

Base dose of Humalog/Novolog /Regular insulin at lunch (circle type of rapid-/short-acting insulin used) is _____ units or does flexible dosing using _____ units/ _____ grams carbohydrate.

Use of other insulin at lunch: (circle type of insulin used): intermediate/NPH/lente _____ units or basal/Lantus/Ultralente _____ units.

Insulin Correction Doses

Parental authorization should be obtained before administering a correction dose for high blood

glucose levels.  ☐ Yes  ☐ No

_____ units if blood glucose is _____ to _____ mg/dl

_____ units if blood glucose is _____ to _____ mg/dl

_____ units if blood glucose is _____ to _____ mg/dl

_____ units if blood glucose is _____ to _____ mg/dl

_____ units if blood glucose is _____ to _____ mg/dl

Can camper give own injections?                    ☐ Yes  ☐ No
Can camper determine correct amount of insulin?    ☐ Yes  ☐ No
Can camper draw correct dose of insulin?           ☐ Yes  ☐ No
Can camper monitor food /diet                      ☐ Yes  ☐ No
Can camper test blood sugar                        ☐ Yes  ☐ No
Can camper test ketones                            ☐ Yes  ☐ No

_____ Parents are authorized to adjust the insulin dosage under the following circumstances: _____

_____

For Campers with Insulin Pumps

Type of pump: _____ Basal rates: _____ 12 am to _____

_____ _____ to _____

_____ _____ to _____

Model of Pump _____; Manufacturer_____ Manufacturer's phone number:_____

Type of insulin in pump: _____

B-3

Type of infusion set: _____

Insulin/carbohydrate ratio: _____

Correction factor: _____

How long has the camper used the pump?    _____

*Camper Pump Abilities/Skills:*                     *Needs Assistance*

Count carbohydrates                          ☐ Yes        ☐ No

Bolus correct amount for carbohydrates consumed     ☐ Yes        ☐ No

Calculate and administer corrective bolus           ☐ Yes        ☐ No

Calculate and set basal profiles                    ☐ Yes        ☐ No

Calculate and set temporary basal rate              ☐ Yes        ☐ No

Disconnect pump                              ☐ Yes        ☐ No

Reconnect pump at infusion set                      ☐ Yes        ☐ No

Prepare reservoir and tubing                        ☐ Yes        ☐ No

Insert infusion set                          ☐ Yes        ☐ No

Troubleshoot alarms and malfunctions                ☐ Yes        ☐ No

For Campers Taking Oral Diabetes Medications

Type of medication:    _____ Timing: _____

Other medications:    _____ Timing: _____

Meals and Snacks Eaten at School

Is camper independent in carbohydrate calculations and management?   ☐ Yes   ☐ No

Does camper recognize own low blood sugars?   ☐ Yes   ☐ No

Symptoms_____

Are low blood sugar reactions   Occasional___   Frequent___   Mild___   Severe___

Does child   Lose consciousness? ___Yes ___No   Have Seizures ___ Yes ___No

Does camper recognize own high blood sugars:_____

Has child experienced ketoacidosis?  No_____ Yes_____  If yes, date of last episode:

*Meal/Snack*          *Time*                    *Food content/amount*

Breakfast         _____

        _____

Mid-morning snack   _____

Lunch _____

Mid-afternoon snack _____

Dinner _____

Snack before exercise?        ☐ Yes  ☐ No
Snack after exercise?         ☐ Yes  ☐ No
Other times to give snacks and content/amount: _____

_____

Preferred snack foods: _____

Foods to avoid, if any: _____

Instructions for when food is provided to the campers (e.g., as part of a party or food sampling event): _____

_____

Exercise and Sports

Parent will provide a fast-acting carbohydrate such as _____ so that it can be available at the site of exercise or sports.

Restrictions on activity, if any: _____ camper should not exercise if blood glucose level is below _____ mg/dl or above _____ mg/dl or if moderate to large urine ketones are present.

**Hypoglycemia (Low Blood Sugar)**

Usual symptoms of hypoglycemia: _____

_____

Treatment of hypoglycemia: _____

_____

Glucagon should be given if the camper is unconscious, having a seizure (convulsion), or unable to swallow.

Route _____, Dosage _____, site for glucagon injection: _____arm, _____thigh, _____other.

If glucagon is required, administer it promptly. Then, call 911 (or other emergency assistance) and the parents/guardian.

B-5

**Hyperglycemia (High Blood Sugar)**

Usual symptoms of hyperglycemia: _____
_____

Treatment of hyperglycemia: _____
_____

Urine should be checked for ketones when blood glucose levels are above _____ mg/dl.

Treatment for ketone: _____
_____

Supplies to be Kept at the Camp Site

_____Blood glucose meter, blood glucose test strips, batteries for meter

_____ Lancet device, lancets, gloves, etc.

_____Urine ketone strips

_____Insulin pump and supplies

_____Insulin pen, pen needles, insulin cartridges

_____Fast-acting source of glucose

_____Carbohydrate containing snack

_____Glucagon emergency kit

Signatures

**This Diabetes Medical Management Plan has been approved by:**

_____        _____
Camper's Physician/Health Care Provider          Date

I give permission to the camp staff, trained diabetes personnel, and other designated staff members of _____ to perform and carry out the diabetes care tasks as outlined by _____'s Diabetes Medical Management Plan.  I also consent to the release of the information contained in this Diabetes Medical Management Plan to all staff members and other adults who have custodial care of my child and who may need to know this information to maintain my child's health and safety.

**Acknowledged and received by:**

_____        _____
Camper's Parent/Guardian                          Date

_____        _____
Camper's Parent/Guardian                          Date

**APPENDIX C**

Physical Exam Form

To be filled out and approved by the camper's diabetes nurse educator, endocrinologist or primary care provider.

Dear Diabetes Team:

Your cooperation in supporting the following information about an applicant for (insert camp name) will be greatly appreciated. The child will not be accepted at camp without your approval on this form.

**To Parent/Guardian:** Please complete boxed information BEFORE submitting to Physician

Name of applicant _____    Gender: (circle one)   M    F

Date of birth ____/____

Date of most recent exam:

I have read the Diabetes Medical Management Plan, attached to this form, and certify that it provides an easy to understand, complete regime of diabetic care for this child's safety at camp. I recognize that the camper will be more active at this camp than in school and represent that this plan accounts for applicable varying activity levels.

Have any complications of diabetes or disabilities been detected? Yes/No (circle one) If yes, please specify:

_____

Is the camper emotionally and physically mature or responsible enough to independently manage his/her diabetes? _____ yes; _____ no. If not, please explain the minimum level of medical licensure and training required for the camper's safety (unless fully described in the Management Plan): _____.

Do you have any specific concerns regarding the management of this child's diabetes or health at school or camp not fully described in the Management Plan? ___ Yes ___ No. If so please explain: _____

Do you recommend any limitations on child's activity while at camp beyond those described in the Management Plan? Yes _____ No _____ If yes, please describe:

_____

I certify that the information above is correct to the best of my knowledge and agree to answer questions and provide management guidance to the Camp.

C-1

Primary Care Physician/Endocrinologist's Name (typed or printed)

_____

Address: _____

Phone: ( ) _____

**Primary Care Physician/Endocrinologist's Signature:**

_____


Parents/Guardians name (typed or printed)

_____

Address: _____

Phone: ( ) _____

**Parents/Guardians Signature:**

**Father:**

**Mother:**

**Legal Guardian:**

**Legal Guardian:**

## APPENDIX D
### RELEASE AND WAIVER OF LIABILITY

THIS IS A RELEASE AND WAIVER OF LIABILITY (hereinafter referred to as "Release") made this _____ day of _____, 20__, by and between the Camp and _____ and _____ residing at _____, who are the parent(s) or guardian(s) of _____ (the "Child").

WHEREAS, the Parent(s) or Guardian(s) has engaged the Camp to provide a summer camp program for the child.

NOW, THEREFORE, in consideration of the agreements and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.      The Parent(s) and/or Guardian(s) hereby fully and forever release and discharge the Camp from any and all liability, claims, demands, injuries, actions or causes of action, including attorneys' fees and costs, as a result of any action or failure to take action by the Camp. The Parent(s) and/or Guardian(s) expressly agree that the Child's use of the Club or attendance at the Camp are undertaken at the sole risk of the Child and/or Parent(s) and/or Guardians and that the Camp shall not be liable for any damages or injuries to the Child or the property of the Child or be subject to any claim, demand, injury, action or causes of action, including but not limited to for any injury or damage resulting from the negligence of the Camp, Camp members, Camp guests and/or other campers and/or third parties.

2.      This Release shall be governed by the laws of the State of _____[location of the Camp], without regards to conflict of law principles.

3.      This Release supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning all subject matters covered herein.  This Release constitutes the entire agreement among the parties with respect to the subject matters discussed herein.

4.      The reference in this Release to the term the Camp, shall include Town Sports International, Inc. and all of its affiliates, subsidiaries, successor corporations, parent corporations, predecessor corporations and any and all of their directors, officers, employees, agents and representatives.  The terms Parent(s)/Guardian(s) shall include the Child and the dependents, heirs, executors, administrators, assigns and successors of the parent, guardian and/or child.

5.      The Guardians and/or Parents and/or Child recognize that the failure of any guardians, parents, and or child to comply with Camp policies, guidelines, directions,

D-1

regulations and or other applicable law may result in nonadmision or removal of the child from the Camp. I give permission to trained Camp personnel to seek emergency assistance when deemed necessary.

6.    If one or more of the provisions of this Release shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect or impair any other provision of this Release This Release shall be construed as if such invalid, illegal or unenforceable provisions had not been contained herein.

THE CAMP

By:_____
Name: _____
Title: _____
Date: _____


ALL CUSTODIAL PARENT(S) and
GUARDIAN(S)


By: _~Kay Thompson~_____
Name: _Kay Thompson_____
Title: _mother + next friend_
Date: _3/18/06_____

By: _~signature~_____
Name: _Quintus G. McAley_
Title: _Father_____
Date: _03/18/06_____

D-2

**APPENDIX E**

**RELEASE RE**
**E.M. and THE UNITED STATES OF AMERICA v. TOWN SPORTS**
**INTERNATIONAL, INC. AND TSI WELLESLEY, INC.**
**Civil No. 05-10611-GAO**
**United States District Court for the District of Massachusetts**

For consideration to which the parties agree Plaintiffs were not otherwise entititled, Kay Thompson and Quintus Medley on behalf of Eleanor Medley, a minor, and her heirs, parents, siblings, guardians, executors, administrators, successors, assigns, agents and attorneys (hereinafter referred to as "Releasors")   hereby fully and finally release and discharge Town Sports International, Inc., TSI Wellesley, Inc., and Camp Wellesley and their successors, predecessors, parents, subsidiaries, agencies, affiliates, and related entities, and any and all of their respective present and former employees, officials, directors, officers, agents, and attorneys (hereinafter collectively referred to as "Releasees and Agents") from any and all claims, demands, rights, damages, costs, losses, suits, actions, causes of action, attorneys' fees and expenses of any nature whatsoever, in law or equity, known or unknown, arising from or by reason of any matter, act, omission, cause or thing whatsoever, whether known or unknown, foreseen or unforeseen, including without limitation: any and all claims by or on behalf of Releasors that Releasees and Agents have ever committed; any statutory violation or other wrong with respect to Releasors insofar as such claims have or could have been asserted in Releasors' claims (including but not limited to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. and the Massachusetts Public Accommodations Law, M.G.L. c. 272 § 98) and any and all claims of other liability or damage of any nature whatsoever which have arisen or might have arisen from any alleged acts, omissions, events, circumstances or conditions related to the activities of the Releasees and/or Releasees and Agents; any and all claims arising out of any alleged violations of any alleged contract, express or implied; any covenant of good faith and fair dealing, express or implied; any tort (including but not limited to claims of willful or negligent infliction of emotional harm, libel, slander, and invasion of privacy), any legal restrictions on Releasees and/or Releasees and Agents, or any federal, state or other governmental statute, regulation or ordinance, including any and all claims for monetary recovery, liquidated, compensatory or punitive damages and attorneys' fees and expenses, and any and all claims whatsoever unasserted by Releasors in any claim, complaint, suit or charge against Releasees and Agents for or on account of any matter or thing whatsoever occurring up to and including the date of execution of this

F-1

Consent Order.  Releasors represent and warrant that they have not and will not assign their interest in any of their asserted claims or any unasserted claims against Releasees to anyone.

> I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF AND I EXECUTE THIS RELEASE ON BEHALF OF E.M., NAMED PLAINTIFF IN THE ABOVE-CAPTIONED ACTION AND HER RELEASORS, ACTING UNDER NO DURESS AND OF MY FREE WILL AND WITH ADVICE OF COUNSEL.

Dated: _____3/18/06_____

KAY THOMPSON, mother and next friend to E.M.

Dated: _____3/18/06_____

QUINTUS MEDLEY, father

F-2